609 F.Supp. 113 (1985)
CINE 42ND STREET THEATER CORPORATION, Leonard Clark and the Brandt Organization, Inc., Plaintiffs,
v.
The NEDERLANDER ORGANIZATION, INC., Harris Nederlander, Inc., New Amsterdam Nederlander, Inc., Jujamcyn Company, Inc., Cambridge Investment Group, Ltd., Park Tower Realty Corp., the New York State Urban Development Corporation, Times Square Redevelopment Corporation and the City of New York, Defendants.
No. 84 Civ. 7595 (WCC).
United States District Court, S.D. New York.
April 17, 1985.
Warshaw, Burstein, Cohen, Schlesinger & Kuh, New York City, for plaintiffs Cine 42nd St. Theater Corp. and Leonard Clark; James E. Daniels, New York City, of counsel.
Rubin, Baum, Levin, Constant & Friedman, New York City, for plaintiff The Brandt Organization, Inc.; Martin J. Schwartz, New York City, of counsel.
Leahey & Johnson, P.C., Susan M. Heilbron, Vice President, Legal Dept. N.Y. State Urban Development Corp. and Times Square Redevelopment Corp., New York City, for defendants N.Y. State Urban Development Corp. and Times Square Redevelopment Corp.; Peter J. Johnson, New York City, of counsel.
Weil, Gotshal & Manges, New York City, for defendants The Nederlander Organization, Inc., Harris Nederlander, Inc., and New Amsterdam Nederlander, Inc.; Irving Scher, New York City, of counsel.
Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendant The City of New York; *114 Jeffrey Schanback, New York City, of counsel.
Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Park Tower Realty; Gerald Gobel, New York City, of counsel.
Breed, Abbott & Morgan, New York City, for defendants Jujamcyn Co., Inc. and Cambridge Inv. Group, Ltd.; Robert A. Bicks, New York City, of counsel.
Schapiro, Wisan & Krassner, New York City, for defendant Jujamcyn Co., Inc.; Seth L. Schapiro, New York City, of counsel.
Craig L. Tessler, Gen. Counsel, New York City, for Cambridge Investment Group, Ltd.

OPINION AND ORDER
WILLIAM C. CONNER, District Judge.
This suit is one of many to arise out of the recent efforts by the State and City of New York to redevelop the Times Square area of Manhattan. As part of that project, the New York State Urban Development Corporation ("the UDC") and the City of New York ("the City") decided to acquire, by negotiation or if necessary by condemnation, five movie theaters in the area and to lease them to private developers in hopes that they would be restored and operated as legitimate Broadway theaters. In anticipation of acquiring the theaters, the UDC and the City conditionally designated three Broadway theater operators, the Nederlander Organization, Inc. ("Nederlander"), Jujamcyn Company, Inc. ("Jujamcyn"), and Cambridge Investment Group, Ltd. ("Cambridge") to receive the leases and development rights to the five theaters. The UDC and the City also designated Park Tower Realty Corporation ("Park Tower") to provide the funds to acquire and restore the theaters.
Plaintiffs, who own and operate theaters in the Times Square area, brought suit against the UDC, the City, and the conditionally designated developers, alleging that the conditional designations of those developers substantially lessen competition in the Broadway theater industry.[1] In particular, they contend that the designations violate Section 7 of the Clayton Act, 15 U.S.C. § 18, and § 340 et seq. of the New General Business Law, known as the Donnelly Act.
The case is now before the Court on the motions of all defendants to dismiss plaintiffs' complaint under Rule 12(b)(6), F.R. Civ.P.[2] Defendants contend that plaintiffs' Clayton Act claim must be dismissed because: (1) the conditional designations are immune from federal antitrust scrutiny under the state action doctrine; (2) the effect of the designations is pro-competitive; and (3) plaintiffs have not suffered an antitrust injury. Defendants also argue that if the Clayton Act claim is dismissed, the pendent Donnelly Act claim must be dismissed as well.
For the reasons stated below, defendants' motion is granted. I agree with defendants that plaintiffs' federal antitrust claim is barred by the state action doctrine, and that the pendent state claim must be dismissed for lack of subject matter jurisdiction. I need not and do not address defendants' other contentions.

Background
In 1968, the New York State legislature created the Urban Development Corporation in hopes of reversing the deterioration of many municipalities in the state. See *115 New York Unconsolidated Laws § 6254(1) (hereinafter the "UDC Act"). The legislature declared the new entity "a corporate governmental agency of the state, constituting a political subdivision and public benefit corporation." Id.
Among the many problems the legislature sought to remedy through the UDC was "a serious need throughout the state for educational, recreational, cultural and other community facilities, the lack of which threatens and adversely affects the health, safety, morals and welfare of the people of the state." Id. at § 6252. In this regard, the legislature declared that it is a
policy of the state to promote the safety, health, morals and welfare of the people of the state and to promote the sound growth and development of our municipalities through the correction of such substandard, insanitary, blighted, deteriorated or deteriorating conditions, factors and characteristics by the clearance, replanning, reconstruction, redevelopment, rehabilitation, restoration or conservation of such areas, and of areas reasonably accessible thereto the undertaking of public and private improvement programs related thereto, including the provision of educational, recreational and cultural facilities, and the encouragement of participation in these programs by private enterprise.
Id.
To enable the UDC to achieve these goals, the legislature granted the agency far-reaching powers. These include, inter alia, the broad powers enumerated in Section 6255 of the Act:
(3) To make and execute contracts and all other instruments....
* * * * * *
(7) To acquire or contract to acquire ... by grant, purchase, condemnation or otherwise, leaseholds, real, personal or mixed property or any interest therein; to own, hold, clear, improve and rehabilitate, and sell, assign, exchange, transfer, convey, lease, mortgage, or otherwise dispose of or encumber the same.
(8) To create subsidiaries, ....
(9) To acquire, construct, reconstruct, rehabilitate, improve, alter or repair or provide for the construction, reconstruction, improvement, alteration or repair of any project.
* * * * * *
(11) To sell, lease, assign, transfer, convey, exchange, mortgage, or otherwise ... dispose of or encumber any project, ....
* * * * * *
(14) To manage any project, whether then owned or leased by the corporation, and to enter into agreements ... for the purpose of causing any project to be managed.
* * * * * *
(24) To engage the services of consultants ... for rendering professional and technical assistance and advice.
* * * * * *
(29) ... to enter into agreements to pay annual sums in lieu of taxes to any municipality or political subdivision of the state, in respect of any real property which is owned by the corporation or any subsidiary thereof and is located in such municipality or political subdivision.
See also UDC Act § 6263.
In addition to these general powers, the legislature granted the UDC specific powers in connection with "land use improvement projects"[3] such as the Times Square project at issue here. The powers allow the UDC to

sell or lease for a term not exceeding ninety-nine years all or any portion of the real or personal property constituting a land use improvement project to *116 any person, firm, partnership or corporation, either public or private, upon such terms and conditions as may be approved by the corporation, whenever the corporation shall find that such sale or lease is in conformity with a plan or undertaking for the clearance, replanning, reconstruction or rehabilitation of sub-standard and insanitary areas in the municipality in which the project is located. Such sale or lease may be made:

* * * * * *
(c) to any other person, firm, partnership or corporation, without public bidding or public sale....

UDC Act § 6256(1)(emphasis added).
The legislature made clear that both the general and specific powers it granted to the UDC should be broadly construed. For example, in Section 6255(26), the legislature authorized the UDC "[t]o do any and all things necessary or convenient to carry out its purposes and exercise the powers given and granted in [the UDC Act]." In addition, Section 6283 declares that whenever the provisions of the UDC Act "are inconsistent with the provisions of any other law, general, special or local, the provisions of this act shall be controlling." Finally, Section 6284 provides that the Act "should be liberally construed so as to effectuate its purposes."
The legislature gave similarly broad powers to municipalities, with which the UDC is to work closely in formulating and executing redevelopment projects. See UDC Act § 6266(1). The UDC Act provides:
In carrying out any project, the corporation and its subsidiaries shall be empowered to enter into contractual agreements with municipalities and public corporations with respect to the furnishing of any community, municipal or public facilities or services necessary or desirable for such project, and any municipality or public corporation is hereby authorized and empowered, notwithstanding any other law, to enter into such contractual agreements with the corporation and its subsidiaries and to do all things necessary to carry out its obligations under the same.

UDC Act § 6266(6) (emphasis added).
Pursuant to the powers granted to them, in June 1980 the UDC and the City of New York undertook to rehabilitate the blighted Times Square area of midtown Manhattan. The collaborative effort was named the 42nd Street Redevelopment Project (the "Project"). Complaint at ¶¶ 10, 11, 20-23, 27 and 28.
As part of the Project, the UDC and the City decided to acquire, by negotiation or if necessary by condemnation, five movie houses in the redevelopment area. The five theaters are the Harris and New Amsterdam Theaters, both on the south side of 42nd Street between 7th and 8th Avenues, and the Apollo, Selwyn, and Lyric Theaters, all on the north side of 42nd Street between 7th and 8th Avenues. Complaint at ¶¶ 21-22. After acquiring these theaters, the UDC and the City would lease them to private developers for 99 years in exchange for a promise that the theaters would be restored and operated as legitimate Broadway theaters. Complaint at ¶¶ 21-23.
In June 1981, the UDC and the City invited selected developers, including plaintiffs Cine 42nd Street Theater Corporation[4] ("Cine 42") and The Brandt Organization ("Brandt"), to submit proposals for development of the five theaters. Complaint at ¶¶ 23-27. A number of developers, including Cine 42, Brandt, and the defendant theater operators, submitted plans.
In April 1982, the UDC and the City "conditionally designated" defendant Nederlander to develop the Harris and New Amsterdam Theaters, Complaint at ¶ 25, and in August 1984, they "conditionally designated" defendants Jujamcyn and Cambridge to develop jointly the Apollo, Selwyn and Lyric Theaters. Id. at ¶ 26. The UDC and the City also announced in August 1984 that defendant Park Tower would provide a major share of the funds *117 to acquire and renovate the theaters.[5]Id. Plaintiffs were not selected to participate in the redevelopment project.
Plaintiffs contend that the conditional designations of the defendant theater operators substantially lessen competition in the Broadway Theater industry. They allege that Nederlander and Jujamcyn are among the largest Broadway Theater operators, and that they are rapidly increasing their control of the industry. Complaint at ¶¶ 16-17. In plaintiffs' view, the conditional designations of those operators to develop the Times Square theaters further magnify their dominance of the business. Thus, they assert that the designations violate Section 7 of the Clayton Act and the New York Donnelly Act.

Discussion
As I have noted, all defendants have moved pursuant to Rule 12(b)(6), F.R. Civ.P., to dismiss plaintiffs' complaint. Accordingly, my task is a limited one. My role at this stage of the litigation is not to assess the strength or weakness of plaintiffs' case, but only to determine whether plaintiffs are entitled to offer evidence to support their claims. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). I may not dismiss the complaint unless, taking the allegations pleaded as true, it appears beyond doubt that plaintiffs could prove no set of facts in support of their claims that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957). I have accepted plaintiffs' allegations here as true, but I must conclude that they do not state a claim upon which relief can be granted.
I turn first to the Clayton Act claim and the state action doctrine. As the Supreme Court has recently instructed, see Town of Hallie v. City of Eau Claire, ___ U.S. ___, ___, 105 S.Ct. 1713, 1715, 85 L.Ed.2d 24 (U.S. Mar. 27, 1985), the starting point for any analysis of the state action doctrine is Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). In Parker, the California legislature authorized the establishment of an agricultural marketing program that restricted competition among growers and stabilized prices. Brown, a farmer affected by the program, sought to enjoin enforcement of the statute on the ground that it violated the Sherman Act. In passing on the legislation, the Supreme Court expressly assumed that the program would violate the federal antitrust laws if it "were organized and made effective solely by virtue of a contract, combination or conspiracy of private persons, individual or corporate." Id. at 350, 63 S.Ct. at 313. The Court held, however, that the program was immune from federal antitrust attack because "it derived its authority and efficacy from the legislative command of the state." Id. Relying on principles of federalism and state sovereignty, the Court concluded that the Sherman Act was not intended to prohibit state action. Id. at 351, 63 S.Ct. at 313.
In recent years, the Supreme Court has reaffirmed the Parker state action doctrine while refining its scope. In one of its latest decisions, Hoover v. Ronwin, ___ U.S. ___, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), the Court carefully explained the contours of the state action doctrine. In Hoover, an unsuccessful applicant for admission to the Arizona Bar sued individual members of the Arizona Supreme Court's Committee on Examinations and Admissions; he alleged that they had conspired to restrain trade in violation of the federal antitrust laws "by artificially reducing the number of competing attorneys in the State of Arizona." Id., 104 S.Ct. at 1994. The Arizona Supreme Court Rules delegated certain responsibilities to the Committee, such as the administration and grading of examinations, while reserving to the court the ultimate authority to grant or deny admission. Since they were acting pursuant to these rules, the Committee members contended that their conduct was immune from federal antitrust scrutiny under the *118 state action doctrine. The Supreme Court agreed.
The Court explained that when a legislature or state supreme court adopts legislation or rules, its actions "constitute those of the state, ... and ipso facto are exempt from the operation of the antitrust laws." Id. at 1995. No further inquiry need be made as to whether the state intended to act in an anti-competitive way; it is sufficient that the state itself chose to act. Id. at 1998. The Court further explained, however, that
[c]loser analysis is required when the activity at issue is not directly that of the legislature or supreme court, but is carried out by others pursuant to state authorization. ... In such cases, it becomes important to ensure that the anti-competitive conduct of the State's representative was contemplated by the State.
Id. at 1995 (citations omitted). In these circumstances, the Court said, there must be a showing that the state's representative was acting "pursuant to a `clearly articulated and affirmatively expressed state policy' to replace competition with regulation." Id. (quoting Community Communications Co. v. City of Boulder, 455 U.S. 40, 54, 102 S.Ct. 835, 842, 70 L.Ed.2d 810 (1982)).
In Hoover, the Court concluded that the actions of the Committee were in essence the actions of the Arizona Supreme Court itself. The Court emphasized the close supervision the Arizona Supreme Court exercised over the Committee; it noted that the court approved the particular grading formula in question and that it retained sole authority to determine who should be admitted to practice. Id., 104 S.Ct. at 1998. Thus, the Supreme Court found that the Committee's actions were those of the state, and that it need not look for an expressed state policy to replace competition with regulation.
In this case, it is not as clear that the UDC acts as the state itself. While the state legislature did create the agency, it does not appear to exercise the same degree of control over the UDC that the Arizona Supreme Court exercised over its Committee on Examinations and Admissions. Thus, this case is one of the second type of cases discussed in Hoover  one where a representative of the state, as opposed to the state itself, engages in anti-competitive conduct. Therefore, in order for the UDC to be shielded by the state action doctrine, it must show that the legislature clearly and affirmatively authorized it to engage in the anti-competitive conduct at issue here.
The City must make a similar showing to receive the benefit of the state action doctrine. Just weeks ago, in Town of Hallie v. City of Eau Claire, ___ U.S. ___, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Supreme Court held that a municipality must demonstrate that it has acted pursuant to a clearly expressed state policy in order to be entitled to the protection of the state action doctrine. The Court stated that this "clear articulation" requirement did not require the municipality to show that the state compelled it to act. Id. at ___, 105 S.Ct. at 1719. Indeed, the Court said that the legislature need not even expressly state that it intends the policy to have anti-competitive effects. Id. The municipality need only show that "`the legislature contemplated the kind of action complained of.'" Id. (quoting City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978)).
Turning, then, to the UDC Act, I think it unquestionable that the legislature contemplated that the UDC and the City would engage in the conduct plaintiffs complain of here. As I described earlier, the legislature granted the UDC and the City extraordinarily broad powers to eradicate blight in urban areas. The UDC was granted the power "[t]o do any and all things necessary or convenient to carry out its purposes." UDC Act § 6255(26). Similarly, the City was authorized, "notwithstanding any other law, to enter into such agreements with the [UDC] and its subsidiaries and to do all things necessary to carry out its obligations under the same." UDC Act § 6266(6).
*119 If these broad statements are not enough, the legislature appears to have specifically authorized the anti-competitive actions plaintiffs complain of. In UDC Act § 6256(1), the legislature empowered the UDC to sell or lease "all or any portion of the real or personal property constituting a land use improvement project to any person, firm, partnership or corporation, either public or private." Subsection (c) of that provision states that such a sale or lease may be "without public bidding or public sale" (Emphasis added). Obviously, since the legislature itself authorized the UDC to allocate development opportunities without competitive bidding, it foresaw that the UDC and municipalities working in cooperation with it might engage in anti-competitive conduct.
Notwithstanding the state's clear authorization of the actions complained of, plaintiffs contend that the UDC and the City are not entitled to immunity under the state action doctrine because the state did not compel them to take the anti-competitive actions they did. Plaintiffs point out that the UDC and the City have not contended that participation by designated theater operators is necessary to the Project's success. Be that as it may, the Supreme Court made it clear in Town of Hallie v. City of Eau Claire, ___ U.S. ___, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), that a state agency or municipality need not show that it was compelled by the state to act in order to receive the immunity of the state action doctrine. The Court stated that "although compulsion affirmatively expressed may be the best evidence of state policy, it is by no means a prerequisite to a finding that a municipality acted pursuant to clearly articulated state policy." Id. at ___, 105 S.Ct. at 1719. Even though the state did not compel their actions here, I am fully satisfied, for the reasons stated above, that the UDC and the City acted pursuant to a clearly articulated state policy when they designated the defendant theater operators to develop the five Times Square theaters.
Accordingly, I conclude that the conditional designations of the defendant theater operators to develop the five Times Square theaters are exempt from the operation of the antitrust laws.[6] This conclusion leads me to dismiss plaintiffs' Clayton Act claim against not only the UDC and the City, but the other defendants as well. It would be anomalous indeed to hold that the UDC and the City are exempt from antitrust scrutiny because they made their conditional designations pursuant to state authorization, and to hold at the same time that the developers who merely applied for and received those designations are not. See Caribe Trailer Systems, Inc. v. Puerto Rico Maritime Shipping Authority, 475 F.Supp. 711, 724 (D.D.C.1979), aff'd per curiam, No. 79-1658 (D.C.Cir.1980), cert. denied, 450 U.S. 914, 101 S.Ct. 1355, 67 L.Ed.2d 339 (1981). Therefore, defendants' motion to dismiss the Clayton Act claim is granted.
That leaves only plaintiffs' pendent Donnelly Act claim. When a case presents both federal and pendent state claims, and the federal claims are dismissed, the pendent state claims must be dismissed as well. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Simply put, once the federal claims are dismissed, the federal court has no subject matter jurisdiction over the pendent claims. Accordingly, I grant defendants' motion to dismiss plaintiffs' Donnelly Act claim.
For the reasons stated above, plaintiffs' complaint is hereby dismissed, and the *120 Clerk of the Court is directed to enter judgment in favor of defendants.
SO ORDERED.
NOTES
[1] In addition to the UDC, the City, Nederlander, Jujamcyn, Cambridge, and Park Tower, the complaint also names Harris Nederlander, Inc., New Amsterdam Nederlander, Inc., and the Times Square Redevelopment Corporation as defendants. Harris Nederlander, Inc. and New Amsterdam Nederlander, Inc. are both owned and controlled by the Nederlander Organization, Inc. Accordingly, I have referred to all three as "Nederlander." The Times Square Redevelopment Corporation is a subsidiary of the UDC created pursuant to § 6262 of the New York Unconsolidated Laws.
[2] Defendant Park Tower has also moved for an award of attorney's fees. Plaintiffs and Park Tower have agreed, however, that the Court should not address this issue until after the instant motion to dismiss is resolved.
[3] UDC Act § 6253(b)(c) defines a "Land Use Improvement Project" as a "plan or undertaking for the clearance, replanning, reconstruction and rehabilitation or a combination of these and other methods, of a substandard and insanitary area, and for recreational or other facilities incidental or appurtenant thereto."
[4] Plaintiff Leonard Clark is president of Cine 42nd Street Theater Corporation.
[5] Plaintiffs have advised the Court that the UDC Board of Directors and the City's Board of Estimate subsequently approved the conditional designations.
[6] Although Parker, Hoover, and Town of Hallie were all Sherman Act cases, there is little doubt that the state action doctrine applies to Clayton Act suits as well. Thus, the Supreme Court has broadly and repeatedly declared that "the federal antitrust laws do not prohibit a State `as sovereign' from imposing certain anti-competitive restraints." City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389, 391, 98 S.Ct. 1123, 1125, 55 L.Ed.2d 364 (1978)(citing Parker v. Brown). See also Community Communications Co. v. City of Boulder, 455 U.S. 40, 52 n. 15, 102 S.Ct. 835, 841 n. 15, 70 L.Ed.2d 810 (1982) ("Parker affords an exemption from federal antitrust laws, based upon Congress' intention respecting the scope of those laws").